| | |
|---|---|
| WILLIAM H. WADE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. William H. Wade, Jr. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Social Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #16] be granted, Defendant's

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as the defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

Motion for Judgment on the Pleadings [DE #23] be denied, and the Commissioner's decision be remanded for further proceedings.

## STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability and DIB on March 6, 2012, and for SSI on March 14, 2012, alleging disability beginning April 30, 2010. (R. 14, 196-204.) The applications were denied initially and upon reconsideration, and a request for hearing was filed. (R. 88-89, 124-25, 153-57.) On April 24, 2014, a hearing was held before Administrative Law Judge Edward Seery ("ALJ"), who issued an unfavorable ruling on May 30, 2014. (R. 14, 24.) On July 22, 2015, the Appeals Council denied Plaintiff's request for review. (R. 3-5.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in

original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner uses a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

3

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since April 30, 2010, and that he meets the insured status requirements through December 31, 2016. (R. 16.) Next, the ALJ determined Plaintiff had the following severe impairments: "post-traumatic stress disorder (PTSD), obesity, coronary artery disease with stenting, degenerative disc disease, forearm fracture with bilateral cubital tunnel syndrome and headaches." (*Id.*) The ALJ did not identify any non-severe impairments. (*Id.*) However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he must avoid overhead reaching; he could frequently but not continuously handle and finger; he must change position from sitting to standing every 40 minutes; he is limited to performing simple, routine and repetitive type tasks; and he could have occasional interaction with co-workers, supervisors and the public.

(R. 18.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms, and statements made by his sister in a Third Party Function Report, not fully credible. (R. 19.) At step four, the ALJ concluded Plaintiff

4

could not perform any past relevant work. (R. 22.) At step five, the ALJ determined that Plaintiff could make "a successful adjustment to other work that exists in significant numbers in the national economy" and listed electronics worker, remnant sorter, and agricultural produce sorter as potential occupations. (R. 23.)

IV. Plaintiff's Contentions

Plaintiff contends that the ALJ made three errors when formulating the RFC before step-four of the disability determination process: (1) the ALJ failed to include appropriate non-exertional limitations; (2) the ALJ failed to conduct a function-by-function assessment of Plaintiff's work abilities as required by Social Security regulations and *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); and (3) the ALJ failed to resolve material inconsistencies in the evidence. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #17] at 10.) The undersigned agrees with Plaintiff's assignments of error, and therefore recommends that the case be remanded to the Commissioner.

A. RFC Framework

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3).

5

The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

In practice, formulating the RFC requires that an ALJ conduct a "function-by-function analysis" of a claimant's work abilities before expressing any conclusions about limits on the RFC. *Mascio*, 780 F.3d at 635-6; SSR 96-8p, 1996 WL 374184, at *3. This 'function-by-function analysis' requires an ALJ to discuss a Plaintiff's ability to perform work-related actions listed in 20 C.F.R. § 416.945(b)-(d). *Mascio*, 780 F.3d at 636, n.5.

Crucially, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations." *Monroe v. Calvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citations and internal quotation marks omitted). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). As part of this consideration and explanation, an ALJ

6

Case 5:15-cv-00506-D   Document 27   Filed 02/10/17   Page 6 of 15

must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b)-(c), 416.927(b)-(c); SSR 96-8p, 1996 WL 374184, at *7. Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

An ALJ is required to show his analysis and evaluation when assessing a claimant's RFC because a reviewing court "cannot fill in the blanks for the ALJ." *See Patterson v. Comm'r of Soc. Sec. Admin.*, No. 15-2487, 2017 WL 218855, at *5 (4th Cir. Jan. 19, 2017) (reversing and remanding a disability benefits denial because the ALJ failed to document properly application of mental impairments in RFC assessment).

### B. Exertional and Non-Exertional Limitations in RFC

Plaintiff contends that the ALJ failed to include non-exertional limitations related to the ability to stay on task when the ALJ had previously found (1) that Plaintiff had impairments relating to concentration, persistence, or pace, and (2) that Plaintiff had moderate impairments in his social functioning. Because the ALJ failed to resolve material inconsistencies in the evidence regarding these difficulties, and failed to explain how he arrived at the non-exertional limitations included in the RFC, the court cannot meaningfully review whether substantial evidence supports the ALJ's RFC determination.

7

In this case, the ALJ concluded that Plaintiff had the RFC to perform light work but was limited, *inter alia*, to having "occasional interaction with co-workers, supervisors and the public" and performing "simple, routine and repetitive type tasks." (R. 18.) Plaintiff argues that this limitation is insufficient based on the ALJ's findings that Plaintiff suffered from impairments which moderately limited his ability to stay on task and his ability to maintain concentration, persistence, and pace. (Pl.'s Mem. Supp. J. Pldgs. at 11-13.) Plaintiff, relying on *Mascio*, 780 F.3d at 638, alleges that "[a] limitation to simple, routine, repetitive tasks does not account for limitations in pace and persistence." (Pl.'s Mem. Supp. J. Pldgs. at 11.)

Defendant argues that the non-exertional limitation in the RFC restricting Plaintiff's interaction with co-workers, supervisors, and the public adequately addresses Plaintiff's impairments. (Def.'s Mem. Supp. J. Pldgs. [DE #24] at 6-9.) Defendant is correct that this case is distinguishable from *Mascio* because the ALJ included the non-exertional limitation regarding interaction with others. As Defendant notes, several courts have held that limiting interaction with others addresses moderate difficulties in concentration and persistence. *Id.* (citing *Reiser v. Colvin*, No. 5:14-CV-850-FL, 2016 WL 1183092, at *8 (E.D.N.C. Mar. 28, 2016)); *Dixon v. Colvin*, No. 4:14-CV-228-FL, 2016 WL 520293, at *7 (E.D.N.C. Jan. 21, 2016), *memorandum and recommendation adopted by* 2016 WL 538460 (E.D.N.C. Feb. 9, 2016); *Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015)).

8

Defendant cannot, however, overcome a more serious problem with the ALJ's opinion. The cases finding that a non-exertional limitation regarding interaction with others is sufficient to address moderate difficulties in concentration and persistence do *not* address whether such limitations adequately address difficulty regarding pace. *See, e.g., Reiser*, 2016 WL 1183092, at *8 ("[W]here the ALJ described medical reports showing plaintiff had no significant limitations in her ability to perform at a consistent pace, inclusion in plaintiff's RFC of a limitation on pace was unnecessary."). Here, the ALJ found that "[w]ith regard to concentration, persistence, or pace, the claimant has moderate difficulties." (R. 18.) The Defendant appears to recognize this problem as she argues that "Mr. Wade has not demonstrated or provided substantial evidence that he had difficulties with pace." (Def.'s Mem. Supp. J. Pldgs. at 7.)

Contrary to Defendant's argument, there is evidence in the record that Plaintiff may have difficulty with pace. An opinion in a Comprehensive Clinical Psychological Evaluation co-authored by a licensed psychologist and licensed psychological associate states that Plaintiff's "ability to tolerate the stress associated with day-to-day work activity would probably be limited, given his current affective state and his reported pain level."[2] (R. 395) Additionally, October 2013 medical records from the VA hospital in Durham report that Plaintiff had to be sent to the Emergency Department when coming in for a pre-surgery appointment because he

---

[2] As Plaintiff notes, the ALJ assigned "great weight" to this psychological report. (Pl.'s Mem. Supp. J. Pldgs. at 12-13; R. 22.)

9

developed chest pains and jaw spasms when "walking across the corridor." (R. 497-98.) A person who struggles with stress from day-to-day work or who is unable to handle preoperative stress might struggle with the pace required of full-time employment as an electronics worker, remnant sorter, or agricultural produce sorter. This is a material inconsistency that the ALJ was required to resolve. *See* SSR 96-8p, 1996 WL 374184, at *7.

The issue is not whether this evidence outweighs or is more credible than contrary evidence in the record. Rather, the problem is that the ALJ noted that Plaintiff had moderate difficulty regarding "concentration, persistence, or pace" and then failed to articulate how the RFC limitation he imposed would accommodate or not accommodate that difficulty. Put another way, the ALJ did not provide the required "logical bridge" between his finding and the conclusion he reached regarding non-exertional limitations in the RFC. *See Monroe*, 826 F.3d at 189.

The ALJ's analysis may be as Defendant speculates in her supporting memorandum: that the ALJ imposed the limitation regarding interaction with others "because limitations in [Plaintiff's] ability to stay on task were caused by a social impairment" and that Plaintiff suffers no difficulties with pace. (Def.'s Mem. Supp. J. Pldgs. at 6.) But the ALJ left it to the Defendant to 'fill in this blank,' which amounts to a proscribed post-hoc rationalization. *See Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *3 (E.D.N.C. Dec. 20, 2012) (citation omitted) ("The court cannot supplement the ALJ's explanation with the Commissioner's legal arguments in this court."); *see also Island Creek Coal Co. v. Henline*, 456 F.3d 421, 426 (4th Cir. 2006)

(citing *SEC v. Chenery*, 318 U.S. 80, 95 (1943) for the proposition that judicial review of an agency decision is limited to the reasons invoked by the agency). This failure by the ALJ precludes the court from deciding whether substantial evidence supports the ALJ's RFC determination. *See Ware*, 2012 WL 6645000, at *3 (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) for the proposition that "[j]udicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator").

### C. Function-by-Function Assessment

Plaintiff next argues that the ALJ failed to conduct a function-by-function assessment of Plaintiff's work abilities before formulating Plaintiff's RFC as required by SSR 96-8p and *Mascio*. The undersigned agrees.

In *Mascio*, the Fourth Circuit held that an ALJ in a Social Security disability proceeding must conduct a function-by-function assessment of a claimant's work abilities before reaching an RFC conclusion. 780 F.3d at 636. In *Mascio*, the Fourth Circuit held the ALJ's error in this regard was not harmless because the ALJ's opinion was "sorely lacking in the analysis needed for . . . meaningful[] review." *Id.* at 636-37. Despite the fact that the ALJ had determined what functions he thought Mascio could perform, "he said nothing about Mascio's ability to perform them for a full workday" and did not address conflicting evidence as to Mascio's RFC. *Id.*

Defendant argues this case is distinguishable from *Mascio* because (1) "there [are] no contradictory opinions as to [Plaintiff's] mental limitations" as there were in *Mascio* and (2) "the ALJ explicitly described his reasons for his assignment of weight

11

to the evidence and the opinions." (Def.'s Mem. Supp. J. Pldgs. at 9.) These arguments fail for three reasons.

Defendant is correct that there are no contradictory opinions concerning Plaintiff's mental limitations in this case. The record contains one report of a comprehensive psychological evaluation of Plaintiff. (R. 21-22, 393-96.) The ALJ says he assigned "great weight" to that report. (*Id.* at 22.) However, that report contains an opinion about Plaintiff's work abilities that is inconsistent with the RFC, *viz.* that Plaintiff's "ability to tolerate the stress associated with day-to-day work activity would probably be limited." (R. 22, 395.) That opinion is inconsistent with the ALJ's conclusion that Plaintiff can perform light work as an electronics worker, remnant sorter, or produce sorter. Defendant's suggested interpretation of *Mascio* would confine the case to its facts and would immunize ALJs from having to resolve inconsistencies created by their own conclusions. The undersigned does not believe the Fourth Circuit intended *Mascio* to be so narrowly construed and therefore rejects Defendant's argument in this regard.

Defendant is correct that the ALJ described his reasons for his assignment of weight to the evidence and opinions. The ALJ said that he gave "great weight" to the findings in the Comprehensive Clinical Psychological Evaluation because its findings were supported clinically and were not contradicted by other evidence in the record. (R. 22.) The ALJ even used the weight he assigned to this report to bolster the opinions of the state agency's non-examining, psychological consultant. (R.21.) But

merely saying that he gave great weight to a report does not address the inconsistency between that report and the ALJ's own un-explained and contradictory conclusion.

Finally, and most importantly, neither before nor after the ALJ settles on Plaintiff's RFC does he discuss how Plaintiff's mental or non-exertional limitations may impact the activities listed in 20 C.F.R. § 416.945(b)-(d). As Plaintiff points out, the ALJ does not mention how Plaintiff's moderate limitations in concentration, persistence, and pace affect his ability to work for a full day. (Pl.'s Mem. Supp. J. Pldgs. at 16.) That omission is identical to one of the specific deficiencies that the Fourth Circuit noted in *Mascio.* 780 F.3d at 637 ("[A]lthough the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday.").

In sum, the court cannot meaningfully review the RFC because the ALJ did not conduct a function-by-function assessment of Plaintiff's work abilities taking into consideration his mental impairments. Therefore, the case should be remanded.

### D. Resolution of Inconsistencies

Plaintiff further argues that "remand is required when an ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from meaningful review." (Pl.'s Mem. Supp. J. Pldgs. at 16). The undersigned agrees.

As discussed in subsections B and C above, the ALJ failed to resolve material inconsistencies between the RFC and evidence in the record—evidence that the ALJ either assigned significant weight to or never explained why he was not assigning weight to it. Specifically, the ALJ failed to resolve the inconsistency between the

13

Comprehensive Clinical Psychological Evaluation, the medical records from the VA hospital in Durham, and the RFC. The ALJ's decision in this regard fails to comport with SSR 96-8p, 1996 WL 374184, at *7.

The problem underlying each of Defendant's arguments in this case is one recently noted by the Fourth Circuit:

> [T]he dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable.

*Patterson*, 2017 WL 218855, at *6 (citing *Kohler v. Astrue*, 546 F.3d 260, 267 (2d Cir. 2008)). Here, the ALJ's failure to explain how he arrived at the RFC makes the agency's decision unreviewable. Therefore, remand is required.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #16] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #23] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 24, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or

modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 10th day of February 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge